# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-897

WILDEARTH GUARDIANS

        Plaintiffs,

v.

ANDREW WHEELER, in his official capacity as Administrator
of the United States Environmental Protection Agency,

        Defendant.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1. Under the Clean Air Act, all areas of the country are legally entitled to healthy, clean air. For more than a decade, however, high ozone pollution levels in the Denver Metro-North Front Range Area in Colorado have exceeded federal air quality standards and threatened public health. WildEarth Guardians brings this action for declaratory and injunctive relief to enforce a mandatory deadline set forth in the Clean Air Act. Specifically, WildEarth Guardians ("Guardians") seeks to compel Defendant Andrew Wheeler ("Administrator" or "Defendant") in his official capacity as Administrator of the U.S. Environmental Protection Agency ("EPA"), to carry out his overdue legal obligation to formally determine whether the Denver Metro-North Front Range Area complied with the 2008 National Ambient Air Quality Standards for ozone by the applicable attainment deadline. By law, the Administrator was required to make this determination by January 20, 2019, six months after the Denver Metro-North Front Range Area's July 20, 2018 attainment deadline. 42 U.S.C. §§ 7511(a)(1), (b)(1), (b)(2)(A).

2. Ground-level ozone, the primary component of smog, is a poisonous gas created when volatile organic compounds ("VOCs") and nitrogen oxides ("NOx"), emitted from tailpipes, smokestacks, and oil and gas production, react with sunlight. Ozone poses numerous adverse health and environmental impacts. Public health impacts from ozone exposure range from respiratory irritation and impairment of breathing to hospitalization and an increased risk of premature death. Ground-level ozone further harms growing plants, causes defoliation of trees and crops, and can impair the healthy functioning of entire ecosystems.

3. The Clean Air Act requires EPA to establish health- and welfare-based air quality standards (known as National Ambient Air Quality Standards or "NAAQS") to limit the amount of ozone allowed in the outdoor air. 42 U.S.C. §§ 7409(a), (b). Areas with ozone pollution levels that violate the standards must clean up their air, and areas whose emissions contribute to poor air quality in downwind communities must reduce those emissions.

4. EPA promulgated the 2008 Ozone Standards relevant to this case on March 27, 2008 pursuant to its authority under the Clean Air Act. U.S. Envtl. Prot. Agency, National Ambient Air Quality Standards for Ozone, 73 Fed. Reg. 16,436 (Mar. 27, 2008). EPA designated the Denver Metro-North Front Range Area of Colorado as in marginal nonattainment with the 2008 Ozone Standards effective July 20, 2012. EPA, Air Quality Designations for the 2008 Ozone NAAQS, 77 Fed. Reg. 30,088, 30,110 (May 21, 2012). Yet nearly seven years later, air quality in the Denver Metro-North Front Range Area has failed to substantially improve and continues to violate this critical public health standard.

5. By January 20, 2019, the Administrator was required to make a formal determination regarding Denver's current attainment status with this air quality regulation. By

failing to do so, the Administrator is allowing air quality in the region to continue jeopardizing the health and welfare of millions of Coloradoans and regional visitors, including Guardians' staff and members.

6. Guardians seeks a declaration that the Administrator has violated a mandatory duty by failing to make a timely determination regarding the attainment status of the Denver Metro-North Front Range Area with respect to the 2008 Ozone Standards as required by the Clean Air Act, as well as an order compelling the Administrator to fulfill his statutorily-mandated duty to make such a formal determination by a date certain.

## **JURISDICTION, VENUE, AND NOTICE**

7. This is a Clean Air Act citizen suit against the Administrator alleging a failure of the Administrator to perform a nondiscretionary act or duty under the Clean Air Act. This Court has subject matter jurisdiction over this action pursuant to: 42 U.S.C. § 7604(a)(2) (Clean Air Act citizen suit provision) and 28 U.S.C. § 1331 (federal question).

8. The requested declaratory and injunctive relief is authorized by 28 U.S.C. § 2201(a) (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), 42 U.S.C. § 7604(a)(2) (providing District Court jurisdiction to order Administrator to perform nondiscretionary duty), and 42 U.S.C. § 7604(d) (costs and attorney fees).

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e). EPA maintains a Regional Office in Denver, Colorado, which oversees air quality in Colorado, including monitoring compliance with the Ozone Standards in the Denver Metro-North Front Range Area. The Denver Regional Office is, in part, responsible for ensuring the Administrator performs the nondiscretionary duty at issue in this Complaint, and a substantial part of the events

or omissions giving rise to Guardians' claims occurred in EPA's Denver office. Guardians also maintains a major office in Denver, Colorado.

10. On January 22, 2019, by letter served by certified mail, with a courtesy copy sent by electronic mail, Guardians provided the Administrator with written notice of the claims stated in this action. Guardians provided this notice pursuant to 42 U.S.C. § 7604(b)(2), and 40 C.F.R. §§ 54.2 and 54.3. More than 60 days have elapsed since Guardians gave notice, and the Administrator has not yet taken the non-discretionary duty demanded by Guardians. There exists between the parties an actual, justiciable controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## PARTIES

11. Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding the Earth's climate and air quality. Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment.

12. As a non-profit corporation, Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e), and is entitled to bring a citizen suit under the Clean Air Act, 42 U.S.C. § 7604(a).

13. Guardians has approximately 223,000 activists and members, many of whom live, work, or recreate in the Denver Metro-North Front Range Area affected by the ozone pollution at issue in this case. These members recreate outdoors frequently, commute to work on bicycle, and depend on clean air for their quality of life. Their ability to fully enjoy the outdoor amenities offered by the Denver Metro-North Front Range Area, including hiking, biking, wildlife

viewing, camping, picnicking, and outdoor sports, are harmed by the failure of the Administrator to perform his nondiscretionary duty. They are also reasonably concerned regarding the short- and long-term health consequences of repeated exposure to high levels of ozone pollution. This harm stems primarily from the Administrator's failure to ensure that air quality is sufficiently protected in a timely manner, as mandated by the Clean Air Act. This harm would be eliminated or reduced if the Administrator performed his nondiscretionary duty to determine the Denver Metro-North Front Range current attainment status, as of July 20, 2018, with respect to the 2008 Ozone Standards.

14. The violation at issue in this complaint relates to the Administrator's failure to determine whether the Denver Metro-North Front Range Area has attained compliance with the 2008 Ozone Standards in a timely manner. The Administrator has failed to meet the statutory deadline for making this determination. The Administrator's failure to make this legally-required determination is delaying clean air for the Denver Metro-North Front Range Area. Given continuing high levels of ozone pollution in the region, if the Administrator finalized his determination that the area failed to attain compliance with the 2008 Ozone Standards by July 20, 2018, this determination would trigger additional pollution abatement requirements for the area. Specifically, the State of Colorado would need to adopt more stringent clean air safeguards to reduce air pollution, submit a plan to clean up the region's unhealthy air, and set a new deadline for the area to finally come into attainment with the 2008 Ozone Standards.

15. The Administrator's unlawful delay is forcing the Denver Metro-North Front Range Area – including Guardians' staff and members – to endure greater air pollution and public health risks than permitted by the Clean Air Act.

16. The violations alleged in this Complaint have injured and continue to injure the recreational, aesthetic, and health interests of Guardians and its members. These injuries are traceable to the Administrator's failure to perform a nondiscretionary duty. Granting the requested relief would redress these injuries by compelling action by the Administrator that Congress determined to be an integral part of the regulatory scheme for attaining the 2008 Ozone Standards.

17. Defendant, ANDREW WHEELER, is the Administrator of the United States Environmental Protection Agency. As Administrator, Mr. Wheeler is charged with implementation and enforcement of the Clean Air Act, including carrying out the nondiscretionary duty at issue in this case. Mr. Wheeler is sued in his official capacity.

## LEGAL BACKGROUND

18. Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 91-1146, at 1 (1970), reprinted in 1970 U.S.C.C.A.N. 5356, 5356. The Clean Air Act was intended "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b).

19. Consistent with these goals, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants, including ozone, "the attainment and maintenance of which . . . are requisite to protect the public health" with "an adequate margin of safety," 42 U.S.C. §§ 7409(a)-(b), and to designate areas with air pollution levels that exceed the national standards as "nonattainment" areas, 42 U.S.C. § 7407(d)(1).

20. Section 109(d)(1) of the Clean Air Act requires the Administrator to complete a "thorough review" of air quality criteria and the National Ambient Air Quality Standards every five years, and to "make such revisions in such criteria and standards and promulgate such new standards as may be appropriate" under the Act. 42 U.S.C. § 7409(d).

21. After EPA establishes or revises a National Ambient Air Quality Standard, the Clean Air Act "requires EPA and States to begin taking steps to ensure that the new or revised standards are met." National Ambient Air Quality Standards for Ozone, 73 Fed. Reg. at 16503. "The first step is to identify areas of the country that do not attain the new or revised standards, or that contribute to violations of the new or revised standards," and to designate such areas as in a state of "nonattainment." *Id*. The Administrator classifies ozone nonattainment areas as Marginal, Moderate, Serious, Severe, or Extreme, based on the level of ozone pollution monitored in the area. 42 U.S.C. § 7511.

22. States in which ozone nonattainment areas are located are required to adopt State Implementation Plans to reduce ozone pollution to below the applicable National Ambient Air Quality Standards, in this case the 2008 Ozone Standards. 42 U.S.C. 7511a. State and local air quality management agencies develop these plans and submit them to EPA for approval. To receive EPA approval, State Implementation Plans must identify the specific emissions control requirements the state will rely on to attain and/or maintain compliance with the applicable National Ambient Air Quality Standards. 42 U.S.C. §§ 7502, 7511a.

23. Baseline federal regulatory requirements for State Implementation Plans vary depending on the nonattainment area's classification level, with areas experiencing more severe ozone pollution mandated to do more to improve air quality. For example, plans for all ozone

7

nonattainment areas must require any increase in VOC emissions (an ozone precursor) to be "offset" by reductions in VOC emissions, but the offset ratio (emissions reductions to increases) ratchets up for more serious nonattainment classifications. 42 U.S.C. § 7511a. For Marginal Areas, the offset ratio is 1.1, which increases to 1.15 for Moderate nonattainment areas, up to 1.2 to 1 for Serious Areas, up to 1.3 to 1 for Severe Areas, and finally up to 1.5 to 1 for Extreme Areas. *Id.*

24. In Serious Areas, the level of VOC emissions at which a source is treated as a "major source" also drops from 100 to 50 tons per year. *Compare* 40 C.F.R. § 70.2 (generally defining "major source") *with* 42 U.S.C. § 7511a(c) (defining "major source" for Serious Areas). Thus, unlike in Marginal and Moderate Areas, existing sources in Serious Areas with the potential to emit between 50 and 100 tons of VOCs per year must apply for a Title V operating permit as a major source, 40 C.F.R. § 70.3(a)(1), and new or modified major sources with potential emissions between 50 and 100 tons per year also face stringent preconstruction New Source Review permitting requirements. 42 U.S.C. § 7502(c)(5).

25. State implementation plans for ozone nonattainment areas are generally due within 3 years of EPA's nonattainment designation. 42 U.S.C. § 7502(b).

26. EPA promulgated the 2008 Ozone Standards on March 27, 2008, setting a limit on ozone concentrations in the air of no more than 0.075 ppm on an eight-hour basis. EPA, NAAQS for Ozone, 73 Fed. Reg. 16,436 (Mar. 27, 2008). A violation occurs at a monitoring site when the three-year average of the annual fourth highest eight-hour ozone concentration exceeds 0.075 ppm, or 75 ppb. 40 C.F.R. § 50.15(b). The 2008 Ozone Standards provided a higher level

of air quality protection than the [superseded] 1997 Ozone Standards, based on EPA's determination of public health requirements.[1]

27. After the Administrator's designation of nonattainment areas for the 2008 Ozone Standards, Marginal Areas were given three years to sufficiently improve air quality to meet the new ozone limits. For these Marginal Areas, the attainment deadline was set for July 20, 2015. 42 U.S.C. §§ 7511(a)(1), (b)(1); EPA, Air Quality Designations for the 2008 Ozone NAAQS, 77 Fed. Reg. 30,088, 30,110 n. 1 (May 21, 2012). Moderate Areas were given six years to comply with the 2008 Ozone Standards, and the attainment deadline for such areas was set for July 20, 2018. *Id.*

## FACTUAL BACKGROUND

28. In May 2012, the Administrator officially designated the Denver Metro-North Front Range Area of Colorado as in marginal nonattainment with the 2008 Ozone Standards, effective July 20, 2012. EPA, Air Quality designations for the 2008 Ozone Standards, 77 Fed. Reg. 30,088, 30,110 (May 21, 2012).

29. After this nonattainment designation, Colorado was required to adopt and implement air quality regulations to bring the Denver Metro-North Front Range Area into attainment with the 2008 Ozone Standards by July 20, 2015. 42 U.S.C. §§ 7511(a)(1), (b)(1); Air Quality Designations for the 2008 Ozone National Ambient Air Quality Standards, 77 Fed. Reg.

---

[1] Note that although EPA finalized a new, even stricter ozone NAAQS in 2015, limiting concentrations to no more than 0.070 ppm over an eight hour period, *see* U.S. Envtl. Prot. Agency, National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015), EPA has retained the 2008 Ozone Standards in addition to the new 2015 standard. U.S. Envtl. Prot. Agency, Implementation of the 2015 National Ambient Air Quality Standards for Ozone: Nonattainment Area Classifications and State Implementation Plan Requirements, 83 Fed. Reg. 62,998, 63,000 (Dec. 6, 2018).

30,088, 30,110 n. 1; *see also* U.S. Envtl. Prot. Agency, Reclassification of Several Areas for the 2008 Ozone NAAQS, 81 Fed. Reg. 26,697, 26,699 (May 4, 2016).

30. The State of Colorado, however, failed to take sufficient action between 2012 and 2015 to improve air quality as needed to protect public health and welfare in the Denver Metro-North Front Range area. Accordingly, air quality in the Denver Metro-North Front Range Area failed to meet the 2008 Ozone Standards by the July 20, 2015 attainment deadline. Because of this continued nonattainment, the Administrator was legally required to reclassify the region and "bump up" its nonattainment status from Marginal to Moderate, which then-Administrator McCarthy did by rule on May 4, 2016, effective June 3, 2016. *See* Reclassification of Several Areas for the 2008 Ozone NAAQS, 81 Fed. Reg. at 26,699. The current Denver Metro-North Front Range nonattainment area includes the entirety of the counties of Adams, Arapahoe, Boulder, Broomfield, Denver, Douglas, and Jefferson, and portions of the counties of Larimer and Weld. *See* 40 C.F.R. § 81.306.

31. After the 2016 Moderate nonattainment designation, the State of Colorado was then required to bring the Denver Metro-North Front Range Area into compliance with the 2008 Ozone Standards within six years after the effective date of EPA's initial designation of nonattainment, or by July 20, 2018. *See* 42 U.S.C. § 7511(a)(1); 81 Fed. Reg. at 26698 (stating "[t]he reclassified areas must attain the standard as expeditiously as practicable, but in any event no later than July 20, 2018."). Within six months after the July 20, 2018 attainment deadline, or by January 20, 2019, the Administrator was then required to determine whether the area attained the NAAQS. *Id.* § 7511(b)(2)(A). The Administrator's determination is a nondiscretionary duty. As of the date of this complaint, the Administrator has yet to make such a determination.

32. The Administrator's failure to make this legally-required determination is delaying clean air for the Denver Metro-North Front Range Area. Existing publicly-available data indicates that the Denver Metro-North Front Range Area likely failed to meet the 2008 Ozone Standards by the attainment date. If the Administrator finalized his determination that the area failed to attain compliance with the 2008 Ozone Standards, EPA would be required as a matter of law to "bump up" the classification of the area from Moderate to Serious. *See id*. § 7511(b)(2)(A)(i). This change in classification would require the State of Colorado to adopt more stringent clean air safeguards to reduce ozone pollution, to submit a revised State Implementation Plan to clean up the region's unhealthy air, and would set a new deadline for the area to finally come into attainment with the 2008 Ozone Standards. In essence, the Administrator's delay is forcing the residents of and visitors to the Denver Metro-North Front Range Area to endure greater air pollution and public health risks than the law allows.

33. Although EPA has proposed to grant the State of Colorado a one-year extension to demonstrate attainment, *see* EPA, Reclassification of Several Areas Classified as Moderate for the 2008 Ozone National Ambient Air Quality Standards, 83 Fed. Reg. 56,781 (Nov. 14, 2018), EPA has not finalized this rule. Proposed Rule, NAAQS: Determinations of Attainment, Extensions of the Attainment Date, and Reclassification of Several Areas Classified as Moderate for the 2008 Ozone Standards, https://www.regulations.gov/document?D=EPA-HQ-OAR-2018-0226-0001 (last visited March 26, 2019). Thus, by January 20, 2019, the Administrator was required to make a formal determination as to whether the Denver Metro-North Front Range Area attained compliance with the 2008 Ozone Standards, as of July 20, 2018. The Administrator failed to do so by the applicable deadline, and has not done so since.

# CLAIM FOR RELIEF

**Clean Air Act - Failure to Make a Finding Regarding the Denver Metro-North Front Range Area's Compliance or Non-Compliance with the 2008 Ozone Standards by the Mandatory Deadline of January 20, 2019**

34. Guardians hereby incorporates by reference all allegations in the proceeding paragraphs.

35. EPA initially designated the Denver Metro-North Front Range area as in a state of nonattainment with the 2008 Ozone Standards effective July 20, 2012.

36. After this initial nonattainment designation, the Denver Metro-North Front Range Area again failed to attain compliance with the 2008 Ozone Standards by its new July 20, 2015 deadline. Accordingly, as required by the Clean Air Act, EPA "bumped up" the classification of the Denver Metro-North Front Range area's nonattainment with the 2008 Ozone Standards from Marginal to Moderate, effective June 3, 2016.

37. After being "bumped up" to a Moderate Area, the Denver Metro-North Front Range Area was legally required to attain compliance with the 2008 Ozone Standards by the attainment deadline of July 20, 2018. 42 U.S.C. § 7511(a)(1), (b)(1); 81 Fed. Reg. at 26,698.

38. EPA has not extended Denver's attainment date beyond July 20, 2018.

39. Within six months of the July 20, 2018 attainment deadline, or by January 20, 2019, the Administrator was required by the Clean Air Act to make a formal determination as to whether the Denver Metro-North Front Range Area attained compliance with the 2008 Ozone Standards by the attainment date. 42 U.S.C. § 7511(b)(2)(A).

40. The Administrator failed to make the required attainment determination for the Denver Metro-North Front Range Area by the mandatory deadline of January 20, 2019. The

Administrator has not yet made the required attainment determination.

41. Accordingly, the Administrator has violated and continues to violate its mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A).

42. This violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). The Administrator's violation is ongoing and will continue unless this Court grants the requested relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant has violated and is in violation of his mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A) to make a timely determination by January 20, 2019 regarding whether the Denver Metro-North Front Range Area attained compliance with the 2008 Ozone Standards by July 20, 2018;

B. Order Defendant to perform his mandatory, nondiscretionary duty under 42 U.S.C. § 7511(b)(2)(A) by a date certain to make a formal determination regarding whether or not the Denver Metro-North Front Range Area achieved attainment with the 2008 Ozone Standards by July 20, 2018;

C. Retain jurisdiction to ensure compliance with the Court's injunctive orders;

C. Grant Plaintiff's costs of litigation, including reasonable attorneys' fees pursuant to 42 U.S.C. § 7604(d); and

D. Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of March, 2019.

/s/ Daniel L. Timmons
**Daniel L. Timmons**
WildEarth Guardians
516 Alto Street
Santa Fe, NM  87501
(505) 570-7014
dtimmons@wildearthguardians.org

/s/ Samantha Ruscavage-Barz
**Samantha Ruscavage-Barz**
WildEarth Guardians
516 Alto Street
Santa Fe, NM  87501
(505) 401-4180
sruscavagebarz@wildearthguardians.org

*Attorneys for Plaintiff WildEarth Guardians*